IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RONALD L. DAMERON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:09-CV-425 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff Ronald Dameron ("Mr. Dameron") brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Mr. Dameron filed his application for disability benefits in 2005. (Tr. at 57-59.)[2] His application was denied initially (Tr. at 50-53) and upon reconsideration (Tr. at 46-48). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 44.) After a hearing, the ALJ determined that Mr. Dameron was not disabled within the meaning

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. 5].

of the Act. (Tr. at 23.) Thereafter the Appeals Council denied Mr. Dameron's request for review of the decision. (Tr. at 5-7.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since his amended alleged onset date of April 1, 2006. . . .
>
> 3. The claimant has the following severe impairment: degenerative disc disease. . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). In addition, the claimant is precluded from performing frequent postural activities.

(Tr. at 16-17.)

The ALJ found that Mr. Dameron "has skills from past work that can be transferred to other work. (Tr. at 22.) Considering Mr. Dameron's age and education, along with the above findings regarding Mr. Dameron's work experience and residual functional capacity ("RFC"), the ALJ found that Mr. Dameron was not under a disability as defined in the Act. (Tr. at 22-23.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The scope of review of this decision is "extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir.

2

1981). Courts do not hear the case de novo. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted) (setting out the standards for judicial review). The issue before this Court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock*, 667 F.3d at 472 (*citing* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* The claimant bears the burden as to the first four steps, but the Government bears the burden as to the fifth step.

In undertaking this sequential evaluation process, the five steps are considered in turn. If a claimant carries his or her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, "the claimant is disabled," and there is no need to proceed to step four or five. *Mastro*, 270 F.3d 171, 177 (4th Cir. 2001). Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's residual

3

functional capacity ("RFC"). *Id.* at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. *Id.* at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." *Hines*, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work, considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. *Hines*, 453 F.3d at 567.

III. DISCUSSION

Mr. Dameron contends that the ALJ's RFC assessment and step five determination are not supported by substantial evidence. Specifically, Mr. Dameron challenges the ALJ's credibility assessment and his reliance on the testimony of the vocational expert about transferability of skills. Defendant contends that substantial evidence supports the determination that Mr. Dameron was not disabled.

    A. Credibility

In assessing Mr. Dameron's RFC, the ALJ determined that Mr. Dameron's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Mr. Dameron challenges this finding, claiming that the ALJ required objective evidence

4

of the severity of Mr. Dameron's subjective symptoms, in violation of SSR 96-3p, and that there was not substantial evidence from which to draw unfavorable inferences as to credibility from claimant's domestic activities.

First, Mr. Dameron challenges the ALJ's finding that Mr. Dameron "does not have any ongoing nerve root compression which might be expected based on the degree of pain alleged." (Tr. at 21.)   He contends that this requirement is tantamount to requiring objective evidence of the pain itself, which is reversible error.

Certainly it is so that Mr. Dameron can rely exclusively on subjective complaints, in some circumstances.   However, those complaints "need not be accepted to the extent they are inconsistent with the available evidence."   *Hines,* 453 F.3d at 565; see also *Gowans v. Astrue*, Civil No. SKG-06-2817, 2008 WL 179479, at *11 (D. Md. Jan 17, 2008) (unpublished); *McLamb v. Astrue*, No. 5:08-CV-305-FL, 2009 WL 2046062, at *9 (E.D.N.C. July 14, 2009) (unpublished); *Wetmore v. Astrue*, No. 5:09-CV-38, 2009 WL 6449319, at *22 (N.D. W. Va. Oct. 26, 2009) (unpublished).

Here, Mr. Dameron's lack of ongoing nerve root compression was just one of many cited factors inconsistent with subjective reports of pain.   The ALJ's decision also cited reports of Mr. Dameron's normal strength and normal gait, medical evidence showing no evidence of a change in motor tone or bulk such as disuse atrophy, and his daily activities, including some farm work, travel, exercise at a gym, and household work.   (Tr. at 21-22.)   He also considered the lack of recent medical treatment for pain and the absence of any documented claims about medication side effects.   (Tr. at 21.)   Finally, he found that "there is also no evidence of any complaints of concentration problems such as the claimant presented at the hearing."   (*Id.*)   In sum, the ALJ

5

Case 1:09-cv-00425-CCE-JEP   Document 13   Filed 05/08/13   Page 5 of 8

properly applied the relevant factors in assessing Mr. Dameron's credibility, and substantial evidence supports his determination.

Mr. Dameron also challenges the unfavorable credibility inferences the ALJ drew from Mr. Dameron's domestic activities and gym attendance. In reliance on SSR 96-7p, he argues that an individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, and that the ALJ neglected this possibility in the present case. Here, Mr. Dameron's hearing testimony reflects that his walking and gym attendance are, at least in part, an attempt to alleviate his back pain. (Tr. at 270-72.) However, this finding does little to impact the ALJ's credibility determination. At most, it recategorizes Mr. Dameron's walking and gym attendance within 20 C.F.R. § 404.1529(c)(3) from "daily activities" to "measures you use or have used to relieve your pain or other symptoms." In neither case do these activities so significantly alter the extent to which Mr. Dameron's pain limits his ability to perform basic work activities as to require remand.

      B.      Transferability of Skills

Mr. Dameron next contends that, at step five, the ALJ relied on "insubstantial" vocational expert testimony which listed solely semi-skilled jobs and which failed to identify Mr. Dameron's acquired work skills and the specific jobs to which they transfer, as required by SSR 82-41. The vocational expert testified that:

- Mr. Dameron's past relevant work as a maintenance mechanic for telephone equipment, a cable splicer, and a farmer gave him the transferable skills of the abilities to use hand and power tools, read schematic diagrams, and assemble and disassemble objects in a sequence; (Tr. at 22, 280).

- All the skills "would transfer to bench work positions." (Tr. at 22, 280.)
- Given Mr. Dameron's age, education, work experience, and RFC, he would be able to perform representative occupations such as a solderer, an assembler, and an electrical inspector. (Tr. at 23, 280.)

These findings are supported in the record, including in the vocational report and Mr. Dameron's own testimony. In particular, the vocational report indicates that Mr. Dameron reported having "some basic blueprint reading ability," (Tr. at 121), and Mr. Dameron testified that his past work installing and maintaining telephone lines included "troubleshooting and some splicing." (Tr. at 265.) The ALJ is not required to describe *how* these skills transfer to the representative occupations named by the vocational expert, nor must the expert or the ALJ parse out which skills Mr. Dameron gleaned from each of his previous jobs. *Harris v. Astrue*, 646 F. Supp. 2d 979, 997-998 (N.D. Ill. 2009) (emphasis added). The ALJ properly relied on the vocational expert's testimony, and substantial evidence supports the finding that Mr. Dameron acquired skills that transfer to other work that exists in significant numbers in the national economy.

As a final matter, Mr. Dameron relies on 20 C.F.R. §§ 404.1565(a) and 416, 965(a) to argue that even if he has acquired transferrable skills, his nagging pain, need to take pain medication, and need to walk about to relieve his pain, would interrupt the sort of concentration and persistence required to execute any transferable skill so that he is no better off than if he had only unskilled work experience. However, as set out above, the ALJ found that the record did not show that Mr. Dameron had made any complaints of medication side-effects or concentration

7

problems before the hearing. Accordingly, the ALJ properly determined that Mr. Dameron retained the RFC to perform jobs that exist in significant numbers in the national economy.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Mr. Dameron's Motion for Judgment on the Pleadings [Doc. 7] is **DENIED**, that Defendant's Motion for Judgment on the Pleadings [Doc. 9] is **GRANTED**, and that this action will be **DISMISSED** with prejudice.

This the 8th day of May, 2013.

UNITED STATES DISTRICT JUDGE